Lynch, J.
(concurring). We respectfully disagree only with respect to the majority’s determination to suppress all the physical evidence found in the bedroom. From our perspective, there were articulable facts that would warrant a reasonably *1030 prudent officer in believing that defendant’s bedroom might harbor a dangerous individual or a victim of the altercation. The majority has accurately described the underlying event, but there are a few additional factors of moment. There is no plausible dispute that, for safety reasons, the officer was entitled to search the bedrooms that opened directly into the living room (see Maryland v Buie, 494 US 325, 336 [1990]). The officer explained, “[W]e’ve been ambushed before. . . . And for our own safety and for everyone else in the house, when we walk into a hostile situation like that, our job is to make the scene safe.” Notably, the officer observed “a broken lamp and signs of a disturbance” in the apparent victim’s bedroom and “a glass pipe, and ... a small plastic container with some white chunky substance” in the apparent aggressor’s bedroom that the officer “suspected . . . was narcotics.” At this juncture, the officer heard someone elsewhere in the apartment and, upon inquiry, was informed that defendant’s wife was in the back bedroom off the kitchen — a distance of only 10 feet from the living room. The officer explained that he was uncertain what the status of defendant’s wife was — whether she was a threat or even if she was safe. When he knocked on her locked bedroom door, he “heard scuffling” and “movement.” The officer directed defendant’s wife to open the door. She responded, “Just a minute,” and literally took that long to open the door. The officer testified that, when she did so, he “was hit with a chemical smell, [which] almost burned [his] nose hairs a little bit.” He explained that he then went into the bedroom “to make sure there was no one else hiding in there.”
In our view, the situation at hand, which had spilled into several rooms, was volatile and aptly described by the officer as “hostile.” This context, coupled with the evidence of illegal drugs and the proximity of the back bedroom, provided a reasonable basis for the officer to extend the protective sweep to that bedroom (see People v Gibson, 117 AD3d 1317, 1319-1320 [2014], affd 24 NY3d 1125 [2015]; People v Bryant, 91 AD3d 558, 558 [2012], lv denied 20 NY3d 1009 [2013]; People v Garrido, 34 AD3d 368, 369 [2006], lv denied 8 NY3d 880 [2007]; People v Lasso-Reina, 305 AD2d 121, 122 [2003], lv denied 100 NY2d 595 [2003]; People v Martinez, 187 AD2d 992, 992 [1992], lv denied 81 NY2d 888 [1993]). This is all the more so given the wife’s dilatory actions in exiting the bedroom and the strong chemical odor that emanated from that room. Confronted with these circumstances, the officer had a reasonable basis to check the back bedroom to allay his safety concerns, even after the wife had left the room. In gauging the safety of the situation, the officer was not limited to the information provided by the *1031 occupants of the apartment, but could make his own assessment based on the totality of the circumstances. This case is comparable to the situation in Maryland v Buie (supra), for when that defendant emerged from the basement of the house being searched pursuant to an arrest warrant and was placed under arrest, a detective went into the basement “in case there was someone else” (id. at 328 [internal quotation marks omitted]).
While the protective sweep of the bedroom was justified, as the majority explained, such a sweep is “narrowly confined to a cursory visual inspection of those places in which a person might be hiding” (id. at 327; see People v McAllister, 35 AD3d 300, 300 [2006], lv denied 8 NY3d 925 [2007]). Only items that are found in plain view during a proper protective sweep can be seized or used as the basis of a search warrant (see People v Boyland, 79 AD3d 1658, 1658-1659 [2010], affd 20 NY3d 879 [2012]; People v Martinez, 187 AD2d at 992). Although the officer properly discovered several items in plain view, including bottles of rubbing alcohol, a jug of distilled water and a gallon jar with white residue on the inside, his search exceeded its constitutional limits when he lifted a shirt to discover a hotplate and a cooking pot with liquid in it (see People v Knapp, 52 NY2d 689, 697 [1981]; People v James, 27 AD3d 1089, 1090-1091 [2006], lv denied 6 NY3d 895 [2006]; People v Johnson, 241 AD2d 527, 527-528 [1997], lv denied 90 NY2d 1012 [1997]; People v White, 188 AD2d 423, 423-424 [1992], lvs denied 81 NY2d 886, 894 [1993]; see also People v Goodwin, 286 AD2d 935, 935 [2001], lv denied 97 NY2d 682 [2001]). Therefore, County Court should not have considered evidence of the hotplate and cooking pot in resolving defendant’s suppression motion. That said, whether the remaining evidence provided an adequate basis for the issuance of a search warrant should be addressed, in the first instance, by the trial court (see People v Ingram, 18 NY3d 948, 949 [2012]; People v Sykes, 110 AD3d 1437, 1438 [2013]). We otherwise concur with the majority’s decision.